**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| RODNEY GARRETT, | § | |
| | § | |
| No. 827062, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No.  SA-15-CV-261-XR |
| | § | |
| v. | § | |
| | § | |
| D. CRAWFORD, BEXAR COUNTY | § | |
| DEPUTY SHERIFF; FNU AGUILLONE, | § | |
| BEXAR COUNTY DEPUTY SHERIFF; and | § | |
| JOHN DOE DEFENDANTS 1–5, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

On this date the Court considered the United States Magistrate Judge's Report and Recommendation in the above-numbered and styled case, filed July 17, 2015, (docket no. 38) concerning Defendant D. Crawford's Motion to Dismiss (docket no. 19) and Defendant Aguillone's Motion to Dismiss (docket no. 24). After careful consideration of the Magistrate Judge's Report and Recommendation, for the foregoing reasons, the Court will decline to accept the Magistrate Judge's recommendation in part.  Defendant D. Crawford's Motion to Dismiss (docket no. 19) and Defendant Aguillone's Motion to Dismiss (docket no. 24) are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case arises out of an arrest that took place on February 11, 2014.  Docket no. 6-1 at 5.  Plaintiff Rodney Garrett was convicted of aggravated assault on a public servant after stealing a semi-truck, leading police officers on a high speed chase, firing a shotgun at police officers, and then running into Beall's Department Store during business hours with the firearm still in his

possession.  *See* docket no. 19-5.  Now, Garrett alleges that the conduct of police officers during and after the incident violated his constitutional rights.  Docket no. 6-1 at 2.

Garrett filed suit on April 8, 2015.  Docket no. 1 at 1.  He filed an Amended Complaint on April 27, 2015.  Docket no. 6-1 at 1.  In his Amended Complaint, Garrett begins his factual allegations by stating that at approximately 1:26 p.m. on the day of the incident, he was running through the parking lot of South Park Mall with his hands up.  *Id.* at 3.  At that point, he alleges that Defendant D. Crawford "accelerated his vehicle from about 10 to about 25 mph and struck [Garrett] down to slide across the pavement which caused [him] an abrasive injury, pain, bleeding, and scarring to [his] left leg and knee."  *Id.*  Garrett then states that he limped into Beall's Department Store, where Crawford arrested him.  Garrett claims that from that point on, he "was neither physically nor verbally provocative, nor resistive, nor evasive" and that he was "compliant with the arrest."  *Id.*

Garrett then describes three incidents that took place after his arrest, each involving several of the defendants—all of whom are police officers.  *Id.* at 4.  First, Garrett alleges that he was pinned to the ground by Doe Defendant No. 4 while Crawford and three other Doe Defendants watched and did not intervene.  *Id.*  Garrett then claims that Doe Defendant No. 5 shocked him with a TASER for longer than one minute and that this caused him pain.  *Id.*  He maintains that during this shocking, Crawford and three of the Doe Defendants again did not intervene.  *Id.*  Finally, Garrett alleges that Defendant Aguillone "inflicted a wrestling type of submission hold to hyper-extend [Garrett's] right leg to force [his] ankle up to [his] forehead which caused pain and injury to [his] right leg and knee which took 40 days to heal to the point where [he] could normally walk again."  *Id.*  Garrett again states that Crawford and three of the Doe Defendants did not intervene while this took place.  *Id.*

Before the Court are two pending motions to dismiss.  Crawford filed his Motion to Dismiss on May 18, 2015.  Docket no. 19.  Aguillone filed his Motion to Dismiss on May 21, 2015.  Docket no. 24.  On July 17, 2015, Magistrate Judge Mathy set forth her Report and Recommendations.  Docket no. 38.  Judge Mathy recommended that each of Garrett's claims be dismissed.  Docket no. 38 at 19.

## STANDARDS OF REVIEW

### I.      Review of a Magistrate Judge's Report and Recommendation

When a party objects to the Magistrate Judge's report and recommendation, the Court is required to conduct a *de novo* review.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  However, when no objections are filed, the Court reviews the recommendation to determine whether it is clearly erroneous.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918 (1989).  The Magistrate Judge's recommendation was mailed by certified mail on July 20, 2015.  Docket no. 40.  Garrett advised the Court of a change of address on August 3, 2015 (docket no. 42) and so the recommendation was mailed again to his new address on August 7, 2015.  Docket no. 44.  That mailing was certified as received on August 12, 2015.  Docket no. 45.  No objections have been filed in this case at this time and the time for doing so has expired.  Therefore, the Court reviews for plain error.

### II.      Rule 12(b)(6) Motion to Dismiss Standard

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015).  To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556.

## ANALYSIS

Section 1983 prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but simply provides a "method for vindicating federal rights elsewhere conferred." *Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004).

Crawford and Aguillone have argued that Garrett has failed to state a claim on which relief can be granted and also essentially asserted the defense of qualified immunity.[1]  Docket nos. 19, 24.  Qualified immunity protects government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.* Qualified immunity "is an *immunity from suit* rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  Government officials are entitled to qualified immunity if their conduct "was objectively reasonable in light of the legal rules that were clearly established at the time of [their] actions."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1232 (2003).

Qualified immunity questions should be resolved "at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (internal quotation marks omitted).  However, the Fifth Circuit has noted that "if the defendant asserts qualified immunity, the complaint should generally not be dismissed for failure to state a claim because the issue of whether immunity applies is a factual question related to the merits."  *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996).  However, dismissal still may be appropriate "on the grounds of qualified immunity . . . if it is supported by the allegations of

---

[1] As Judge Mathy noted, neither motion uses the term "qualified immunity."  *See* docket no. 38 at 5 n. 11.  However, Defendants Crawford and Aguillone argue that their conduct was "objectively reasonable" and use qualified immunity case law to support their arguments.

the complaint itself." *Id.* In other words, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *McClendon*, 305 F.3d at 323.

Garrett's Amended Complaint alleges claims for excessive force, failure to intervene, and "Texas law aggravated assault by a public servant" around four supposed events: the vehicle hit, the pin, the shocks, and the submission hold. Docket no. 6-1 at 4–6.

## I.      Claims Related to the Alleged Vehicle Hit

A. Excessive Force—Defendant Crawford

Garrett's Amended Complaint alleges that when Crawford struck Garrett with his vehicle, it was an "unreasonably excessive use of unlawful and unjustified force in violation of the rights of the plaintiff under the Fourth Amendment." *Id.* at 4. To establish an excessive force claim, Garrett must show that he suffered: "1) injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994)). To satisfy the first requirement, the injury need not be significant, but must be more than *de minimis*. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Crawford argues that he was justified in striking Garrett with his police cruiser because Garrett "posed an immediate threat" to both Crawford and the public at large. Docket no. 19 at 2. Furthermore, Crawford maintains that any claim for excessive force as a result of the vehicle hit is barred by *Heck v. Humphrey*, since Garrett was convicted of aggravated assault against a public servant for his conduct and had not yet been apprehended when the hit took place. *Id.* Crawford also urges the Court to examine his testimony in the underlying criminal case and the dash cam footage of his police cruiser from the date of the incident. *Id.* Moreover, Crawford

contends that any injury suffered by Garrett as a result of the vehicle hit was *de minimis*. *Id.* at 7. Crawford claims the injury to Garrett's leg was "so slight it did not affect his ability to move" and that it was "nothing more than a scrape." *Id.*

In his Response to the Motions to Dismiss, Garrett first asks that the Court ignore the testimony of Crawford, the dash cam footage, and the other exhibits tendered by Crawford to the Court as they are materials outside of the Amended Complaint. Docket no. 31 at 1. He then argues that Crawford's conduct was not objectively reasonable because he was unarmed and the officers were not in danger at the time of the vehicle hit. *Id.* Garrett also refutes that his injury was *de minimis* and claims that the abrasions "took over a month to heal into a scar," and created "bruising" and "bleeding" on his left leg and knee. *Id.*

Judge Mathy recommended that the claim for excessive force related to the alleged vehicle hit be dismissed without prejudice because such a claim would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Arnold v. Town of Slaughter*, 100 F. App'x 321 (5th Cir. 2004). Docket no. 38 at 13–16. The Court agrees.

In *Heck*, a prisoner who had been convicted of voluntary manslaughter filed a § 1983 claim against the prosecutors and police officers who were involved in his arrest and subsequent conviction. *Heck*, 512 U.S. at 479. The Supreme Court held that a convicted criminal could not bring a § 1983 claim that would challenge the constitutionality of his or her conviction unless the conviction had been previously reversed, expunged, declared invalid, or called into question by federal habeas corpus. *Id.* at 486–87. As a result, when a prisoner seeks damages in a § 1983 suit, a court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at

487.  On the other hand, if a court determines that the suit would not demonstrate the invalidity of any outstanding criminal conviction against the plaintiff, the action may proceed.  *Id.*

The Fifth Circuit has analyzed this so-called *Heck* bar in the context of excessive force claims on several occasions.  *See, e.g.*, *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283 (5th Cir. 2013); *Arnold v. Town of Slaughter*, 100 F. App'x 321 (5th Cir. 2004).  In *Arnold*, a man became engaged in a "scuffle" with a police officer that caused both men to fall down and Arnold to break a bone in his neck.  *Arnold*, 100 F. App'x at 322.  Arnold was convicted of resisting an officer as a result of the incident.  *Id.*  A few months later, he brought a § 1983 suit against the police officer and the city for excessive force, among other things.  *Id.*  The defendants eventually moved for summary judgment on the grounds that the *Heck* bar prevented Arnold from bringing such a suit.  *Id.* at 323.  The district court granted the motion and the Fifth Circuit affirmed the decision, explaining that "a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct."  *Id.* (citing  *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999).  Moreover, the Fifth Circuit explained that Texas law permits an officer to "use any force—even deadly force—to protect against an aggravated assault" and that "any force [is] justified in response to an assault."  *Id.*

Furthermore, the Fifth Circuit has presented a clear, threshold inquiry a court must undertake in determining whether the *Heck* bar applies to a particular excessive force claim: Would a finding that the officer's use of force was objectively unreasonable necessarily call into question the validity of the plaintiff's conviction?  *Ballard v. Burton*, 444 F.3d 391, 398 (5th Cir. 2006).  If it is possible for the plaintiff to have assaulted the officer *and* for the officer's use of force to have been objectively unreasonable, then *Heck* does not bar the plaintiff's claim.  *Id.*  On

the other hand, if the only way that the officer's use of force could be objectively reasonable is for the plaintiff to have assaulted the officer, then *Heck* bars the plaintiff's excessive force claim. *Id.*

For example, in *Sappington*, a district court determined that a plaintiff's conviction for assaulting a police officer did not necessarily imply the invalidity of his criminal conviction. *Sappington*, 195 F.3d at 236.  The plaintiff's conviction, however, required proof that he had caused serious bodily injury to a police officer.  *Id.* at 237.  As a result, the Fifth Circuit overturned the district court's ruling, and explained that as a matter of law, the force used by the police officer could not be deemed excessive under *Heck*.  *Id.*  Rather, Texas law provided that the police officer "could use force up to and including deadly force to protect himself against the other's use or attempted use of unlawful deadly force" and "could use deadly force in the course of an arrest if he reasonably believed that there was a substantial risk that the person to be arrested would cause serious bodily injury if the arrest were delayed."  *Id.*

In this case, the Court finds that a judgment in favor of Garrett on his claim for excessive force against Crawford for striking him with the vehicle would "necessarily imply the invalidity of his conviction."  *See Heck*, 512 U.S. at 487.  Here, it is not possible for Garrett to have shot his gun several times at Crawford during the chase—as his conviction for aggravated assault on a public servant specifies—and for it to have been objectively unreasonable for Crawford to strike him with the vehicle.  *See Ballard*, 444 F.3d at 398 (setting forth the inquiry).  Garrett had fired several rounds during a police chase and was sprinting into a crowded mall during business hours.  Docket no. 6-1 at 3.  Even if Garrett no longer possessed a weapon at this point in time, it was perfectly reasonable for Crawford to use any force necessary—including deadly force—to prevent Garrett from potentially assaulting mall customers.  *See Mace v. City of Palestine*, 333

F.3d 621, 624 (5th Cir. 2003) ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others.") (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).  Like the police officer in *Sappington*, who could use deadly force if he reasonably believed that there was a substantial risk that the arrestee would cause serious bodily injury to others if arrest was delayed, so to was Crawford authorized to use deadly force to prevent Garrett—a man who led police on a high-speed chase and fired several rounds while driving down the freeway—from sprinting into the mall.  *See Sappington*, 195 F.3d at 237.  As a result, Garrett is barred by *Heck* from bringing a claim for excessive force against Crawford for the alleged vehicle hit.  This claim is dismissed without prejudice.

B.  Texas Law Claim—Defendant Crawford

Garrett's Amended Complaint also attempts to bring a claim for what Garrett calls "Texas law aggravated assault by a public servant." *Id.* at 4.  There is seemingly no such cause of action under Texas law.  Rather, aggravated assault by a public servant is a criminal offense found in the Texas Penal Code.   Tex. Pen. Code § 22.02 (2015); *see also Seaton v. State*, 385 S.W.3d 85, 88 (Tex. App.—San Antonio 2012, pet. ref'd) (describing the crime).  As a result, any such claim brought by Garrett is dismissed with prejudice.

## II.    Claims Related to the Alleged Pin

A.  Excessive Force—Doe Defendant No. 4

Garrett alleges that when Doe Defendant No. 4 "held [him] down upon the ground," this constituted an excessive use of force in violation of the Fourth Amendment.  Docket no. 6-1 at 6.  To state such a claim, Garrett must allege that he suffered: "1) injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was

clearly unreasonable." *Tarver*, 410 F.3d at 751 (citing *Harper*, 21 F.3d at 600).  Moreover, the injury suffered must be more than *de minimis*.  *Glenn*, 242 F.3d at 314.

Defendants Crawford and Aguillone argue that Garrett has failed to state any claim for excessive force related to this specific incident because "[w]hen one is arrested, one's liberty is restrained."  Docket no. 19 at 4; docket no. 24 at 1.  Furthermore, they both note that Garrett has alleged no injury as a result of being held down on the ground.  *Id.*  The Court finds these arguments persuasive.  As to this particular incident, Garrett has not alleged *any* actual use of force—let alone *excessive* force that is "clearly unreasonable."  *See Tarver*, 410 F.3d at 751 (citing *Harper*, 21 F.3d at 600).   Rather, he simply states that he was held down on the ground. Moreover, Garrett complains of no injuries related to this pin; the injuries alleged in the Amended Complaint are related to the vehicle hit, the shocks, and the submission hold.  *See* docket no. 6-1 at 3, 4.  The Court finds that Garrett has failed to state a claim upon which relief can be granted against Doe Defendant No. 4 for excessive force.  This claim is dismissed without prejudice.

## B.  Texas Law Claim—Doe Defendant No. 4

Garrett's Amended Complaint again attempts to bring a claim for "Texas law aggravated assault by a public servant" as a result of the pin.  *Id.* at 4.  As explained above, this is a criminal offense in Texas—not a civil cause of action.  As a result, any such claim brought by Garrett is dismissed with prejudice.

## C.  Failure to Intervene—Defendant Crawford, Doe Defendants Nos. 1, 2, and 3

Garrett also brings a cause of action against Defendant Crawford and Doe Defendants Nos. 1, 2, and 3 for failure to intervene while Doe Defendant No. 4 allegedly pinned him to the ground.  Docket no. 6-1 at 5–6.  The Fifth Circuit has held that "[a]n officer that is present at the

scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  However, if a court determines that no excessive force was present, there can be no claim for failure to intervene.  *Gilbert v. French*, 364 F. App'x 76, 83–84 (5th Cir. 2010) ("Since we conclude no officer used excessive force in apprehending Gilbert, we simultaneously conclude that no officer unconstitutionally failed to intervene.").  Here, as the Court has concluded that no excessive force was alleged by Garrett in relation to the pin, he has failed to state a claim for failure to intervene as to this particular incident, as well.  Any such claim is dismissed without prejudice.

## III.    Claims Related to the Alleged Shocks

A.  Excessive Force—Doe Defendant No. 5

Garrett brings an excessive force claim against Doe Defendant No. 5 for "caus[ing] [him] pain by shocking [him] for in excess of a minute."  Docket no. 6-1 at 4.  Crawford and Aguillone argue that Garrett's conviction bars him, under *Heck*, from bringing *any* claim for excessive force as a result of that day's events because the conviction was for aggravated assault of a public servant.  Docket no. 19 at 5; docket no. 24 at 4.  Moreover, they contend that his injuries from being shocked were purely *de minimis*.  Docket no. 19 at 5; docket no. 24 at 4.  Garrett responds to the motions to dismiss by arguing that judgment for himself would not necessarily imply the invalidity of his conviction and that his claims are not barred by *Heck.*  Docket no. 31 at 1.  As to this specific claim for excessive force, the Court agrees.

To begin, the Fifth Circuit has made clear that "[b]y proving an excessive force claim, a plaintiff will not invariably invalidate his conviction."  *Arnold*, 100 F. App'x at 323 (citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)).  Rather, "the *Heck* determination depends

on the nature of the offense and of the claim." *Id.* The Fifth Circuit has distinguished excessive force allegations that are inherently wrapped up in the same conduct that led to plaintiffs' convictions and alleged excessive force that occurred after, or are distinct from, the conduct that led to plaintiffs' convictions. *See, e.g.*, *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008). In *Walker*, for instance, the Fifth Circuit found that the plaintiff's claim was barred by *Heck*. *Id.* However, the court explained: "Appellant's claim, however, is not that the officers used excessive force *after* he stopped resisting or to stop his resistance; his claim is based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by the Appellee officers for no reason." *Id.* (emphasis added). In other words, if the plaintiff had attempted to bring an excessive force claim for conduct that occurred *after* he had been subdued, it would not be barred.

The Fifth Circuit made the same distinction in *Arnold*. *Arnold*, 100 F. App'x at 324. There, the court noted that "Arnold's claims are not that the police used excessive force *after* he stopped resisting arrest . . . ." *Id.* It then went on to illustrate two cases from other circuits that would survive the *Heck* bar: *Nelson v. Jashurek* and *Smithart v. Towery*. *Id.* (citing *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)). Notably, in *Smithart*, the plaintiff was convicted of driving his pick-up truck directly at some police officers. *Smithart*, 79 F.3d at 952. However, he contended in his § 1983 suit that the officers arrested him, placed him in handcuffs, and *then* beat him. *Id.* As a result, the plaintiff was not prevented from bringing the suit, since it would not challenge the finding that he drove his truck at the police officers. *Id.*

The same contrast—force that occurs before an arrestee has been subdued and force that occurs after an arrestee has been subdued—was also examined by the Fifth Circuit in *Bush v.*

*Strain*.  *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).  In *Bush*, a woman was convicted of resisting arrest.  *Id.* at 495.  She alleged that after "she was arrested, handcuffed, and compliant" a police officer "injured her by intentionally and unreasonably pushing her head into the rear window of an automobile."  *Id.*  However, the officers painted a different picture, and claimed that she was still resisting arrest when the incident occurred.  *Id.*

The court explained that the determination of whether excessive force claims are barred by *Heck* is "analytical and fact-intensive, requiring [courts] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying criminal conviction."  *Id.* at 497.  If the "factual basis for the conviction is temporally and conceptually distinct from the excessive force claim," the *Heck* bar is not implicated.  *Id.* at 498.  Indeed, "a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance."  *Id.*  Since there was conflicting evidence about whether the woman was injured before or after she stopped resisting, the claim was not barred by *Heck*.  *Id.* at 502.

Such a distinction is applicable here.  Like the woman in *Bush* and the plaintiff in *Smithart*, Garrett claims that the alleged shocks occurred after he was no longer "physically nor verbally provocative nor resistive nor evasive" and was "compliant with the arrest."  Docket no. 6-1 at 3.  While Crawford and Aguillone urge the Court to examine video of the incident that show Garrett was not cooperative, such an inquiry would be inappropriate by the Court when considering a motion to dismiss.  *Bosarge*, 796 F.3d at 439 (explaining that when performing a Rule 12(b)(6) analysis, all factual allegations from the complaint are to be taken as true).[2]

---

[2] Of course, the Court would diligently analyze the aforementioned video and other similar exhibits if presented in conjunction with a motion for summary judgment.

14

Moreover, per Defendants' own exhibit, Garrett's conviction for aggravated assault of a public servant rested on conduct that took place during the chase; it was not incumbent on his conduct post-arrest.  Docket no. 19-1 at 17 (transcribing Crawford's testimony describing the shooting). As a result, any judgment for Garrett on this particular excessive force claim—derived from the shocks—would not call into question the validity of his conviction, and thus it is not barred by *Heck.  See Ballard*, 444 F.3d at 398 (setting forth the test).

Of course, even though Garrett's claim survives the *Heck* bar, the Court must still examine the complaint to make sure it can survive a Rule 12(b)(6) inquiry.  To establish an excessive force claim, Garrett must show that he suffered: "1) injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable."  *Tarver*, 410 F.3d at 751 (citing *Harper*, 21 F.3d at 600). To satisfy the first requirement, the injury need not be significant, but must be more than *de minimis*.  *Glenn*, 242 F.3d at 314.

The Fifth Circuit has clarified that a court's determination of whether or not an injury is *de minimis* and whether or not the amount of force used was clearly unreasonable are inextricably linked.  *Brown v. Lynch*, 524 F. App'x 69, 80 (5th Cir. 2013) (relying on a wealth of published Fifth Circuit case law to make that determination, including: *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012); *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999); *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996)).  The Court explained:

> We begin by noting that although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is "directly related to the amount of force that is constitutionally permissible under the circumstances." Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force

> will result in *de minimis* injuries only. Thus, "only one inquiry is
> required to determine whether an officer used excessive force in
> violation of the Fourth Amendment." And as long as a plaintiff has
> suffered "some injury," even relatively insignificant injuries and
> purely psychological injuries will prove cognizable when resulting
> from an officer's unreasonably excessive force.

*Id.* In other words, if the force used is objectively unreasonable, any injury—no matter how

small—will exceed the *de minimis* threshold. *Id.*

Here, Garrett alleges in his Amended Complaint that he was shocked with a TASER

continuously for over a minute and that this caused him pain. Docket no. 6-1 at 4. Even though

such pain may be construed as a "purely psychological" injury, if the Court determines that the

alleged force was excessive and unreasonable, Garrett will have alleged facts evincing the first

element.

As to whether the facts alleged in the Amended Complaint show that the force was

excessive and unreasonable, "[e]xcessive force claims are necessarily fact-intensive; whether the

force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each

particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citing *Graham v.

Connor*, 490 U.S. 386, 396 (1989)) (other citations omitted). Courts should consider "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Graham*, 490 U.S. at 396. Here, while the initial crime was incredibly serious, Garrett

alleges that he was no longer resisting arrest and was calm, handcuffed, and compliant when the

shocks took place. Docket no. 6-1 at 3. TASERing a handcuffed, subdued arrestee would be a

necessarily excessive and unreasonable use of force. *See Badie v. City of New Orleans*, Civ. Ac.

No. 11-2991, 2013 WL 5175648, at *6 (E.D. La. Sept. 12, 2013) (denying a police officer

summary judgment when a plaintiff alleged that the officer used his TASER as a weapon after

the plaintiff was handcuffed and subdued).  Furthermore, while summary-judgment evidence may show that Doe Defendant No. 5 is entitled to qualified immunity on this claim, at this stage in the proceedings, taking the facts in the Amended Complaint as true, such a finding is precluded.  The Court declines to accept Magistrate Judge Mathy's recommendation as to this particular claim and finds that Garrett has stated a claim for excessive force upon which relief could be granted.

B.  Texas Law Claim—Doe Defendant No. 5

Garrett's Amended Complaint again brings a claim for "Texas law aggravated assault by a public servant" as a result of the shocks.  *Id.* at 4.  For the reasons explained above, any such claim brought by Garrett is dismissed with prejudice.

C.  Failure to Intervene—Defendant Crawford, Doe Defendants Nos. 1, 2, and 3

Garrett also brings a cause of action against Defendant Crawford and Doe Defendants Nos. 1, 2, and 3 for failure to intervene while Doe Defendant No. 5 allegedly shocked him. Docket no. 6-1 at 5–6.  Defendant Crawford argues that Garrett has failed to allege that the Defendants were aware of the assault.  Docket no. 19 at 5.  Crawford also contends that he and the other Defendants may have been doing other things at the time the alleged shocks took place. *Id.*

As previously noted,  the Fifth Circuit has held that a plaintiff may bring a claim for failure to intervene—sometimes called bystander liability—when "[a]n officer that is present at the scene . . . does not take reasonable measures to protect a suspect from another officer's use of excessive force . . ."  *Hale*, 45 F.3d at 919.  To establish such a claim, a plaintiff must allege that an officer 1) knew that a fellow officer violated an individual's constitutional rights, 2) had a reasonable opportunity to prevent the harm, and 3) chose not to act.  *Whitley v. Hanna*, 726 F.3d

631, 646 (5th Cir. 2013).  Simply being present at the scene of the alleged use of excessive force, without more, does not give rise to a cognizable claim for failure to intervene.  *See Vasquez v. Chacon*, Civ. Ac. No. 3:08–CV–2046–M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009).  A necessary inquiry in a failure to intervene claim is whether the police officer "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."  *Hale*, 45 F.3d at 919.

Moreover, a court must consider whether or not "an officer 'acquiesce[d] in' the alleged constitutional violation."  *Whitley*, 726 F.3d at 647 (citing *Hale*, 45 F.3d at 919; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193–94 (3d Cir. 1995)).  In making the determination of whether or not an officer acquiesced to the excessive force, courts consider the duration of the alleged use of force and the location of the suspect in relationship to the observing officer.  *Malone v. City of Fort Worth, Tex.*, Civ. Ac. No. 4:09-CV-634-Y, 2014 WL 5781001, at *15–16 (N.D. Tex. Nov. 6, 2014), *appeal dismissed sub nom. Malone v. Tidwell*, 615 F. App'x 189 (5th Cir. 2015).

For example, in *Robinson v. City of Garland*, the Northern District of Texas found that a plaintiff had sufficiently stated a claim for failure to intervene.  *Robinson v. City of Garland, Texas*, Civ. Ac. No. 3:10-CV-2496-M, 2015 WL 9591443, at *8 (N.D. Tex. Nov. 23, 2015), *report and recommendation adopted*, Civ. Ac. No. 3:10-CV-2496-M, 2015 WL 9593623 (N.D. Tex. Dec. 31, 2015).  Like the officers in this case, the police officers in *Robinson* argued that the plaintiff alleged no facts that would demonstrate the officers were aware of the use of force.  *Id.* at 7.  However, the court concluded that since the officers were in relatively close proximity to the use of force and it lasted—according to the complaint—for approximately four to five minutes, the officers would have had an opportunity to intervene and could be held liable.  *Id.*

Similarly, the Eastern District of Texas has found that a plaintiff alleged enough facts that permitted the court to infer that he was entitled to relief on a claim for failure to intervene involving the use of a TASER. *Dwyer v. City of Corinth, Tex.*, Civ. Ac. No. 4:09-CV-198, 2009 WL 3856989, at *6 (E.D. Tex. Nov. 17, 2009). In *Dwyer*, the defendant police officers again argued that the plaintiff had merely alleged their presence at the scene and failed to plead specific facts that showed they observed the force. *Id.* at 5. However, the court concluded that since the plaintiff stated that an officer had used a TASER on him fifteen times in a row, the other officers had enough time to have an opportunity to stop the force. *Id.* at 6 (citing *Hale*, 45 F.3d at 919).

Here, Garrett alleges that he was shocked for over one minute. Docket no. 6-1 at 4. Additionally, he maintains that Crawford and Doe Defendants 1, 2, and 3 "stood by" while this occurred. *Id.* Just as the officers in *Dwyer* had enough time to intervene when the plaintiff was shocked and the officers in *Robinson* had enough time to intervene, more than sixty seconds would have been sufficient time for the officers here to have prevented the continued shocking of Garrett. Moreover, by stating that the police officers "stood by" while the shocks took place, Garrett has alleged that the Defendants observed and acquiesced in the use of force. *See Whitley*, 726 F.3d at 647. As a result, when taking all facts in the Amended Complaint as true, Garrett has stated a claim for failure to intervene—as to this particular use of force—upon which relief could be granted.

### IV. Claims Related to the Alleged Submission Hold

A. Excessive Force—Defendant Aguillone

Garrett brings an excessive force claim against Defendant Aguillone for "inflict[ing]a wrestling type of submission hold to hyper-extend [his] right leg to force [his] ankle up to [his]

forehead." Docket no. 6-1 at 4. Garrett states that this "caused pain and injury to [his] right leg and knee which took 40 days to heal to the point where [he] could walk normally again." *Id.* Crawford and Aguillone again argue that Garrett's conviction bars him, under *Heck*, from bringing *any* claim for excessive force as a result of that day's events because the conviction was for aggravated assault of a public servant and that his injuries were *de minimis*. Docket no. 19 at 5; docket no. 24 at 4. Garrett responds to the Motions to Dismiss by arguing that judgment for himself would not necessarily imply the invalidity of his conviction and that his claims are not barred by *Heck.* Docket no. 31 at 1. As to this particular claim, the Court agrees.

First, for the reasons explained above, because this alleged submission hold occurred after Garrett was arrested and after, as he alleges, he was completely subdued, this claim would not be barred by *Heck*. *See Arnold*, 100 F. App'x at 324 (distinguishing claims for excessive force that are wrapped up in the conduct a plaintiff was convicted for and claims for excessive force that occurred after a plaintiff is compliant). Any recovery by Garrett on this claim would in no way imply the invalidity of his conviction, as this supposed submission hold occurred long after he shot at Crawford.

Second, Garrett has stated sufficient facts to evince each element of a claim for excessive force. To establish an excessive force claim, Garrett must show that he suffered: "1) injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable." *Tarver*, 410 F.3d at 751 (citing *Harper*, 21 F.3d at 600). To satisfy the first element, the injury must be more than *de minimis*. *Glenn*, 242 F.3d at 314. Here, Garrett alleges that he was held in a wrestling-type hold that extended his ankle up to his head. Docket no. 6-1 at 4. He states that this caused him pain for 40 days and interfered with his ability to walk. *Id.* If true, this is a clear use of force that caused an injury

that was more than *de minimis*.   Additionally, given that Garrett states he was calm and compliant at this point in time, such force would be clearly unreasonable.   While summary-judgment evidence may show that Defendant Aguillone is entitled to qualified immunity on this claim, at this stage in the proceedings, the Court finds that Garrett has stated a claim for excessive force upon which relief could be granted.

B.   Texas Law Claim—Defendant Aguillone

Garrett's Amended Complaint again brings a claim for "Texas law aggravated assault by a public servant" as a result of the submission hold.   *Id.* at 4.   For the reasons stated previously, any such claim brought by Garrett is dismissed with prejudice.

C.   Failure to Intervene—Defendant Crawford, Doe Defendants No. 1, 2, and 3

Garrett also brings a cause of action against Defendant Crawford and Doe Defendants Nos. 1, 2, and 3 for failure to intervene while Defendant Aguillone inflicted the alleged submission hold.   Docket no. 6-1 at 5–6.   Defendant Crawford argues that Garrett has failed to allege that the Defendants were aware of the assault and that he and the other Defendants may have been doing other tasks when the submission hold took place.   Docket no. 19 at 5.

The Court finds this claim is distinct from the failure to intervene claim related to the use of the TASER.   To establish a claim for failure to intervene, the plaintiff must somehow allege in the complaint that the officer had a reasonable opportunity to prevent the harm described. *Whitley*, 726 F.3d at 646.   Whereas when describing the shocks, Garrett alleges that the force took place in excess of sixty seconds, here, Garrett has alleged no facts that would allow the Court to conclude that the police officers had an opportunity to prevent the harm.   As a result, Garrett has failed to state a claim upon which relief could be granted and his claim for failure to intervene during the submission hold is dismissed without prejudice.

**CONCLUSION**

Defendant D. Crawford's Motion to Dismiss (docket no. 19) and Defendant Aguillone's Motion to Dismiss (docket no. 24) are GRANTED IN PART and DENIED IN PART.

Plaintiff Rodney Garrett's claims for excessive force related to the vehicle his is DISMISSED WITHOUT PREJUDICE. His claim for "Texas law aggravated assault by a public servant" related to the vehicle hit is DISMISSED WITH PREJUDICE.

His claims for excessive force and failure to intervene related to the pin are DISMISSED WITHOUT PREJUDICE. His claim for "Texas law aggravated assault by a public servant" related to the pin is DISMISSED WITH PREJUDICE.

His claims for excessive force and failure to intervene related to the alleged shocks are not dismissed and remain. His claim for "Texas law aggravated assault by a public servant" related to the shocks is DISMISSED WITH PREJUDICE.

His claim for excessive force related to the submission hold is not dismissed and remains. His claim for "Texas law aggravated assault by a public servant" related to the submission hold is DISMISSED WITH PREJUDICE. His claim for failure to intervene related to the hold is DISMISSED WITHOUT PREJUDICE.

It is so ORDERED.

SIGNED this 1st day of March, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE